# In the United States Court of Federal Claims

### OFFICE OF SPECIAL MASTERS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| GEORGE DOMINGUEZ, | * | |
| | * | No. 12-378V |
| Petitioner, | * | Special Master Christian J. Moran |
| | * | |
| v. | * | |
| | * | Filed: March 6, 2017 |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | Attorneys' fees; interim award. |
| | * | |
| Respondent. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

<u>Clifford Shoemaker</u>, Shoemaker, Gentry & Knickelbein, Vienna, VA for petitioner;
<u>Darryl R. Wishard</u>, United States Dep't of Justice, Washington, DC, for respondent;
<u>Anne Toale</u>, Maglio Christopher and Toale, Sarasota, FL, former counsel for petitioner.

### PUBLISHED DECISION AWARDING
### <u>ATTORNEYS' FEES AND COSTS ON AN INTERIM BASIS</u>[1]

George Dominguez alleges that the tetanus-diphtheria-acellular pertussis ("TDaP") vaccine administered on August 31, 2011, was the cause in fact of his vasculitis, likely Wegener's granulomatosis. While his case was pending Mr. Dominguez's original counsel, Ms. Toale, was permitted to stop representing him. Prior to withdrawing, Ms. Toale filed a motion for attorneys' fees, which the Secretary opposed. Subsequently, Mr. Dominguez engaged Mr. Shoemaker as counsel, and has since filed multiple expert reports in support of his claim. With

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this decision on its website. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

reasonable basis established, Mr. Dominguez's previous attorney, Ms. Toale, is awarded **$29,626.49.**

## Background & Procedural History

On the last day of August 2011, Mr. Dominguez saw his family doctor because of diarrhea, nausea, and lightheadedness that lasted one day. At that visit, Mr. Dominguez received a dose of the TDaP vaccine. Exhibit 1 at 43-44. On October 19, 2011, Mr. Dominguez visited a local emergency room due to pain in his testicles that began earlier that day, and was admitted to the hospital. After remaining in the hospital several days for testing, a rheumatologist diagnosed Mr. Dominguez as suffering from a vasculitis, probably Wegener's granulomatosis. Id. at 177.

Ms. Toale filed a petition on behalf of Mr. Dominguez on June 12, 2012, asserting that the TDaP vaccination caused his subsequent vasculitis. The Secretary requested additional records. See Resp't's Status Rep't, filed Aug. 30, 2012. Ms. Toale filed an additional set of records from Kaiser Permanente as exhibit 3 on January 25, 2013, and a statement of completion on March 14, 2013.

In his Rule 4 report the Secretary did not challenge that Mr. Dominguez suffers from Wegener's granulomatosis, but recommended that compensation be denied for lack of a medical opinion and lack of a medical theory connecting the vaccination to his injury. Resp't's Rep't at 12. The Secretary also asserted that Mr. Dominguez's Wegener's granulomatosis did not meet the Vaccine Act's severity requirement, as his treatment appeared to end less than six months after the disease began. Id. at 13.

A status conference was held on May 28, 2013, in which Mr. Dominguez was ordered to file additional medical records. Because the parties expressed some interest in attempting to resolve the case, Mr. Dominguez was ordered to file an affidavit providing information regarding his damages.

Ms. Toale filed the damages affidavit on August 5, 2013, and additional medical records on September 3, 2013. However, she subsequently asserted that the information in her possession was insufficient for her to prepare a demand that could initiate settlement discussions. See Pet'r's Status Rep't, filed Jan. 20, 2014; Pet'r's Status Rep't, filed Mar. 31, 2014.

On April 25, 2014, Ms. Toale filed a status report stating she had not communicated a demand, and intended to file a motion to withdraw after filing a motion for attorneys' fees and costs. Pet'r's Status Rep't, filed Apr. 25, 2014. No further explanation for the absence of a demand was provided.

On June 10, 2014, Ms. Toale requested that Mr. Dominguez be awarded attorneys' fees and costs. The motion sought an award for work performed by Ms. Toale and other people at her law firm, Maglio, Christopher & Toale ("MCT"). The supporting material is extensive, consisting of an eight-page brief arguing that an interim award is appropriate, timesheets, a summary of costs, 31 pages of receipts to document the costs, and a separate 18-page memorandum supporting the reasonableness of the attorneys' hourly rates and the compensation for travel time. The 18-page memorandum is supported by a separate 78-page appendix.

The Secretary responded on July 9, 2014, arguing Mr. Dominguez lacked reasonable basis, the hourly rates sought for Mr. Dominguez's attorneys are not reasonable, and the hourly rates sought for the MCT paralegals are not reasonable. Resp't's Obj., filed July 9, 2014. On July 16, 2014, Ms. Toale filed a 25-page reply addressing the Secretary's arguments.

On September 12, 2014, Mr. Dominguez, whom Ms. Toale still represented, was ordered to file a status report regarding the prosecution of his case. While the obligation to present this status report was outstanding, an intervening October 6, 2014 order also required the submission of additional briefs regarding reasonable basis by November 5, 2014.[2] After the October 6, 2014 order, but on the same day, Ms. Toale submitted her motion to withdraw, citing "irreconcilable differences" with the petitioner. Ms. Toale served a copy of her motion on Mr. Dominguez at his last known address.

On November 5, 2014, Ms. Toale filed her response to the October 6, 2014 order. As permitted in the October 6, 2014 order, the Secretary addressed this newly submitted material in a sur-reply. The Secretary continued to argue that Mr. Dominguez's case lacked a reasonable basis.

After confirming that Mr. Dominguez had received Ms. Toale's motion to withdraw, the undersigned granted Ms. Toale's motion to withdraw on January 6, 2015. Mr. Shoemaker became petitioner's counsel on April 29, 2015.

---

[2] The relevance of these additional filings is substantially overcome by the subsequent expert report that Mr. Dominguez's new counsel, Mr. Shoemaker, filed on May 18, 2016.

Through Mr. Shoemaker, Mr. Dominguez filed reports from Dr. Mikovits and Dr. Ruscetti. Exhibit 24 (May 18, 2016); exhibit 68 (Jan. 6, 2017). In status conferences, the undersigned suggested that Mr. Shoemaker file for interim fees. However, Mr. Shoemaker has not submitted a separate motion.

## Analysis

Interim fees requests involve three sequential questions, each of which requires an affirmative answer. First, do special masters possess the authority to award attorneys' fees and costs on an interim basis? Second, whether Mr. Dominguez has submitted evidence that makes his previous attorney, Ms. Toale, eligible to receive an award of attorneys' fees and costs? Third, whether, as a matter of discretion, Mr. Dominguez should be awarded his attorneys' fees and costs on an interim basis? A fourth question, independent of interim fees requests specifically, is what is a reasonable amount of attorneys' fees and costs? These questions are addressed below.

**1. Authority to Award Attorneys' Fees and Costs on an Interim Basis**

Binding precedent demonstrates that interim attorneys' fees and costs may be awarded. See Shaw v. Sec'y of Health & Human Servs., 609 F.3d 1372 (Fed. Cir. 2010); Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343 (Fed. Cir. 2008). In light of these Federal Circuit decisions, special masters (including the undersigned) have rejected respondent's argument that interim awards are not permitted under the Vaccine Act. See Fester v. Sec'y of Health & Human Servs., No. 10-243V, 2013 WL 5367670, at *8 (Fed. Cl. Spec. Mstr. Aug. 27, 2013) (declining to revisit Shaw); Crutchfield v. Sec'y of Health & Human Servs., No. 09-39V, 2011 WL 3806351, at *5 (Fed. Cl. Spec. Mstr. Aug. 4, 2011) (citing numerous supporting decisions); Paluck v. Sec'y of Health & Human Servs., No. 07-889V, 2011 WL 1515698, at *1-3 (Fed. Cl. Spec. Mstr. Mar. 30, 2011). So, too, in this case, the Secretary's argument against the authority to award interim attorneys' fees is not persuasive. See Resp't's Obj., filed July 9, 2014, at 4 n.2.

**2. Eligibility for an Award of Attorneys' Fees and Costs**

A petitioner who has not received compensation may be awarded "compensation to cover petitioner's reasonable attorneys' fees and other costs incurred in any proceeding on such petition if the special master or court

determines that the petition was brought in good faith and there was a reasonable basis for the claim." 42 U.S.C. § 300aa-15(e)(1).

Respondent does not argue that Mr. Dominguez lacks good faith, and there is no evidence to indicate Mr. Dominguez does not believe his claim is valid. Thus, the undersigned finds the petition was brought in good faith.

Respondent does, however, argue in his July 2014 objection to petitioner's request for attorneys' fees that petitioner does not have a reasonable basis for his claim. Resp't's Obj., filed July 9, 2014, 5-20. In support, respondent cites petitioner's lack of an expert report and Ms. Toale's lack of effort to retain an expert. Id. at 2-3. These arguments, at the time they were made, warranted significant attention. Since that time, however, Mr. Dominguez has filed an expert report, which requires a shift in attention to the quality of that report.[3] Indeed, respondent's July 2014 brief foresaw this possibility, stating "petitioner and/or his possible future counsel may be able to provide a reasonable basis for the petition at some point down the road." Id. at 20.

The undersigned finds that the present record includes a reasonable basis for Mr. Dominguez's claim. Mr. Dominguez has filed expert reports from Dr. Ruscetti, who has a Ph.D. in Microbiology, and Dr. Mikovits, who has a Ph.D. in Biochemistry and Molecular Biology. Additionally, Mr. Dominguez experienced symptoms of his condition allegedly caused by vaccination around four weeks after vaccination. See exhibit 24 at 15. This evidence of expert opinion and appropriate timing is sufficient to establish reasonable basis. See Chuisano v. United States, 116 Fed. Cl. 276, 287 (2014) (upholding the special master's finding that evidence of a temporal relationship alone without other evidence, such as an expert opinion, is not sufficient to establish reasonable basis).

### 3. Appropriateness of an Interim Award

When a petitioner meets the eligibility requirements for an award of attorneys' fees and costs on an interim basis, the special master has discretion to make such an award. See Rehn v. Sec'y of Health & Human Servs., 126 Fed. Cl. 86, 92 (2016) (even after good faith and reasonable basis have been established, the special master must determine "whether to exercise his or her discretion to

---

[3] The expert report filed by Mr. Dominguez in this case is a fortunate event for his prior attorneys, as before its filing, there was significant and well-founded opposition to their claim of reasonable basis.

5

award attorneys' fees and costs"); cf. Avera, 515 F.3d at 1352 (holding that even though permitted under the Vaccine Act, an interim award was not appropriate in that case). When determining the appropriateness of an interim award, the Federal Circuit has considered such factors as protracted litigation, costly experts, and undue hardship. Shaw, 609 F.3d at 1375; Avera, 515 F.3d at 1352. These factors are not conjunctive, and meeting only one of Avera's criteria can justify an interim award of fees. Al-Uffi on behalf of R.B. v. Sec'y of Health & Human Servs., No. 13-956V, 2015 WL 6181669, at *7 (Fed. Cl. Sept. 30, 2015).

Petitioner and respondent did not address these factors in their previous briefing, focusing on the more contested issue, reasonable basis. The passage of time, however, has largely eliminated the need for extensive analysis by petitioner and respondent.

### A. Protracted Litigation

In the Vaccine Program, there is not a bright-line test for protracted litigation. As a general rule, however, a period less than two years is not protracted. See Al-Uffi, 2015 WL 6181669, at *7-8.

This litigation has been ongoing for over four years, and resolution is not on the horizon. Some of the protraction is attributable to Mr. Dominguez's change in attorneys, as well as numerous more recent extensions of time to submit petitioner's expert reports. Even discounting significantly for those issues, this case would, at a minimum, be on the cusp of being protracted. This conclusion, in light of the lack of resolution on the horizon, easily projects this case into protracted, if not very protracted, litigation.

The protracted litigation factor weighs in favor of awarding attorney fees and costs on an interim basis.

### B. Costly Experts

Ms. Toale and her firm did not engage an expert during their time as Mr. Dominguez's counsel, and thus are not responsible for costs to experts. This factor is a relatively negative factor and detracts from Ms. Toale's argument that interim fees and costs should be paid.

6

### C. Undue Hardship

The "undue hardship" test consists of two questions. First, whether petitioner's attorney qualifies as a burdened person. Second, whether the hardship is "undue."

In <u>Avera</u>, the Federal Circuit did not clarify whether the hardship in waiting for a decision on attorneys' fees and costs until after the merits resolve should fall on the petitioner, or the petitioner's attorney. <u>See</u> <u>Avera</u>, 515 F.3d at 1352. The Secretary has argued consistently that the petitioner (and not the petitioner's attorney) must suffer the "undue hardship." However, special masters have just as consistently rejected the Secretary's argument. <u>Al-Uffi</u>, 2015 WL 6181669, at *8; <u>Calise v. Sec'y of Health & Human Servs.</u>, No. 08-865V, 2011 WL 2444810, at *2-3 (Fed. Cl. Spec. Mstr. June 13, 2011); <u>Dudash v. Sec'y of Health & Human Servs.</u>, No. 09-646V, 2011 WL 1598836, at *5 (Fed. Cl. Spec. Mstr. Apr. 7, 2011). One judge of the Court of Federal Claims recently agreed with the special masters that the burdened person may be the petitioner's attorney. <u>Rehn</u>, 126 Fed. Cl. at 94.

A conclusion that the petitioner's attorney qualifies as a burdened person does not end the analysis. The delay in payment must constitute a "hardship" and that hardship must be "undue." The Federal Circuit did not define either term. In the absence of further Federal Circuit guidance, other sources are consulted. One dictionary defines "hardship" as "extreme privation," and "undue" as "exceeding what is appropriate or normal; excessive." The American Heritage Dictionary 619, 1473 (3d ed. 1993).

Ms. Toale is waiting for fees for work performed as far back as November 2011. <u>See</u> Pet'r's App. for Attorneys' Fees and Costs, filed June 6, 2014, at Appendix 1 at 1. Were this case close to resolution, perhaps further waiting by counsel would not be an undue hardship. The case, however, is not close to resolution, and it is uncertain when resolution will allow a full adjudication of outstanding attorneys' fees and costs.

Further, the withdrawal of an attorney may favor an interim award. <u>See</u> <u>Woods v. Sec'y of Health & Human Servs.</u>, 105 Fed. Cl. 148, 154 (2012).

Thus, the undersigned finds that an interim award is warranted in this case to alleviate an undue hardship.

**4. Reasonableness of Requested Amounts**

Mr. Dominguez seeks $27,681 in attorneys' fees and $3,808.99 in costs for a total of award of $31,489.99.  Pet'r's Reply in Support of Fees, filed July 16, 2014, at 25.

Under the Vaccine Act, a special master may award reasonable attorneys' fees and costs.  42 U.S.C. § 300aa-15(e)(1).  Reasonable attorneys' fees are calculated by multiplying a reasonable hourly rate by a reasonable number of hours expended on litigation, the lodestar approach.  Avera, 515 F.3d at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)); Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993).  A petitioner's counsel in the Vaccine Program is paid the forum rate unless the bulk of the work is performed in a locale other than the forum (District of Columbia) and the local rate is significantly lower than the forum rate.  Avera, 515 F.3d at 1349.  If these two requirements are met, the Davis exception applies, and that petitioner's counsel is paid according to the local rate.  Id.; see Davis Cty. Solid Waste Mgmt. and Energy Recovery Special Serv. Dist. v. United States Envtl. Prot. Agency, 169 F.3d 755, 757-60 (D.C. Cir. 1999).

The statutory requirement that only reasonable amounts be awarded applies to costs as well as fees.  See Perriera v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994).

### A. Attorneys' Fees

Attorneys' fees are comprised of the hours billed by petitioner's counsel, including attorneys (Ms. Toale, Mr. Franklin J. Caldwell, and Jennifer G. Maglio) and paralegals, multiplied by their respective hourly rates.  Avera, 515 F.3d at 1347-48.  Parties can dispute hourly rates, hours billed, or both.

### (1) *Attorneys - Ms. Toale, Mr. Caldwell, and Ms. Maglio*

The attorneys for Mr. Dominguez billed hours in this case between late 2011 and mid-2014.  For this time period Mr. Dominguez seeks an hourly rate of $300 for Ms. Toale, Mr. Franklin J. Caldwell, and Ms. Jennifer G. Maglio.  Exhibit 5 to Pet'r's Reply.  Mr. Dominguez does not argue for forum rates.  See Pet'r's Mem., dated June 6, 2014, at 14 ("the reasonableness of MCT's hourly rates is supported by local court decisions from Sarasota, Florida, affidavits of Sarasota litigators, [and] prior decisions of the local court").

8

The Secretary argues that petitioner's attorneys' rates are not reasonable for the Sarasota, Florida, legal market, and that full rate compensation for attorney travel is not reasonable. The Secretary also advances arguments against the number of hours billed, though only in context of his attempt to establish a lack of reasonable basis. See Resp't's Obj., at 18, 30, 33.

(a) *Hourly Rate*

In arguing against Ms. Toale's proposed hourly rate, respondent states that Ms. Toale received $225 per hour in 2005. Id. at 24. Respondent then applies national CPI inflation and argues that Ms. Toale's reasonable rate would range from $259 per hour in 2011 to $274 per hour in 2014. Id. at 24-25.

While inflation contributes to an attorney's reasonable hourly rate, experience is also a significant component. As respondent observes, Ms. Toale was admitted to practice in 1992, and litigated her first Vaccine Program case in 2003. Id. at 23. Thus, in 2005, Ms. Toale had 13 years of total experience, but only 2 years of Vaccine Program experience. Whereas between 2011 and 2014 Ms. Toale had between 19 and 22 years of total experience, and between 8 and 11 years of Vaccine Program experience. This substantial increase in both overall litigation experience, as well as Vaccine Program experience, surely resulted in increased efficiency, and therefore warrants a rate increase beyond that of inflation. See McCulloch v. Sec'y of Health & Human Servs., No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015) (providing rate ranges based on experience). Consistently, and working from the assumption that Ms. Toale's 2005 rate of $225 per hour was reasonable,[4] the undersigned finds Ms. Toale's $300 per hour rate for 2011 to 2014 reasonable. This rate is consistent with that found by other special masters for this time period. See O'Neill v. Sec'y of Health & Human Servs., No. 08-243V, 2015 WL 2399211, at *5 (Fed. Cl. Apr. 28, 2015); Ferguson v. Sec'y of Health & Human Servs., No. 14-975V, 2016 WL 4140949, at *2 (Fed. Cl. July 11, 2016).

In arguing against Mr. Caldwell's hourly rate, respondent discounted Mr. Caldwell's hourly rate relative to Ms. Toale's hourly rate based on his having significantly less experience than Ms. Toale in the Vaccine Program. See Resp't's Obj., at 30; but see Pet'r's Reply, at 13 n. 9. In 2011, Ms. Toale had

---

[4] This assumption, admittedly, is the subject of debate on both sides. See Pet'r's Reply, at 13; Resp't's Obj., at 24.

9

approximately 20 years of total litigation experience and approximately 10 years of Vaccine Program experience, whereas Mr. Caldwell had comparable total litigation experience, but only between 3 and 5 years of Vaccine Program experience.  See Resp't's Obj., at 23-24.  Given this disparity in experience within the Vaccine Program, the undersigned finds that Mr. Caldwell's hourly rate should be slightly less than that of Ms. Toale.  Thus, a reasonable hourly rate for Mr. Caldwell is $275 per hour for work performed in 2012 and 2013.

It appears that Ms. Maglio began working on this case in the context of writing the reply regarding attorneys' fees.  Her proposed rate is $300 per hour.  Ms. Maglio's litigation and Vaccine Program experience is comparable to that of Mr. Caldwell.  Therefore, the undersigned finds that Ms. Maglio's hourly rate should be $275 per hour.

### (b)  *Number of Hours Billed*

The Secretary's objection to Mr. Dominguez's interim fee petition makes specific arguments about the way counsel spent their time, and thereby the number of hours billed.  See Resp't's Obj., at 16-19.  Those arguments, however, target reasonable basis.  Id.  The Secretary, in essence, argues that counsel put the cart before the horse by not conducting "minimal research of the literature" before doing the other work necessary to file this petition.  Id. at 18.  This point is now moot.  Mr. Dominguez's new counsel's success in obtaining adequate expert report effectively absolves petitioner's previous counsel of these errors, if any, in this case.

Respondent also objects to Mr. Caldwell receiving his full hourly rate during travel.  Per Gruber, assessments of the appropriate travel rate should be handled on a case by case basis.  See Gruber v. Sec'y of Health & Human Serv., 91 Fed. Cl. 773, 791 (2010).  In this case it is impossible for the undersigned to distinguish what portion of the five hours could possibly be allocated to travel because these entries are two of the very few block entries in the fee petition.  Exhibit 5 to Pet'r's Reply.  Given this lack of clarity, the undersigned reduces the five possible travel hours to four possible travel hours, thus reducing the fee application by $275.

Finally, the undersigned conducted a line-by-line analysis of all the entries documented in the timesheets, despite the fact that when making reductions, a line-by-line evaluation of the fee application is not required.  McCulloch, 2015 WL 5634323, at *5 (quoting Wasson by Wasson v. Sec'y of Health & Human Servs.,

10

24 Cl. Ct. 482 (1991)). The attorneys' timesheets are organized, and contain few block entries. Therefore, no further hour deductions are warranted.

Given Mr. Caldwell's and Ms. Maglio's hourly rate reduction, as well as the hour removed for travel, the amount awarded for attorney work in this case is reduced by $637.50.

### (2) *Paralegals*

The paralegals for Mr. Dominguez billed hours in this case between late 2011 and mid-2014. For this time period Mr. Dominguez seeks an hourly rate of $135 per hour for the certified and registered paralegals, and from $95.00 to $105 per hour for paralegals (not registered or certified). Exhibit 5 to Pet'r's Reply. Mr. Dominguez does not argue for forum paralegal rates.

The Secretary argues that petitioner's paralegal rates are not reasonable for the Sarasota, Florida, legal market. The Secretary does not advance an argument against the number of hours billed.

(a) *Hourly Rate*

Both petitioner and respondent bring significant arguments to bear regarding the hourly rates of the paralegals in this case. The undersigned, however, has the benefit of looking at these arguments in the context of McCulloch. The special master in McCulloch found that it was reasonable for experienced paralegals specializing in vaccine work in Boston, Massachusetts, to bill $135 per hour in 2014 and 2015. McCulloch, 2015 WL 5634323, at *21. The upper boundary for forum paralegal rates from 2014 through 2016 was $145 per hour.

In this case, petitioner argues that comparable paralegals in Sarasota, Florida should receive the same rate for comparable work as the uppermost forum paralegals. Pet'r's Reply, at 20. This request, given the forum to non-forum distinction that existed in 2011 through 2014, is unreasonable. Further, the bulk of the paralegal work in this case occurred in 2012 and 2013, as opposed to the 2014 and 2015 work cited in McCulloch. Exhibit 5 to Pet'r's Reply; McCulloch, 2015 WL 5634323, at *21. Viewing petitioner's request in this light also makes it unreasonable.

Part of petitioner's counsel's argument is that they have previously billed their paralegals at these rates in the Vaccine Program. See Pet'r's Reply, at 20.

11

While the fact that these paralegals have been awarded a rate previously is certainly evidence that can be considered, it is not dispositive of the rates prevailing for similar services in the community.[5]  See Blum, 465 U.S. at 896.  For support of the rates in the community the petitioner primarily offers affidavits regarding billing rates for similarly situated firms, and a few cases.  See Pet'r's Reply, at 20.  In contrast, respondent offers multiple federal cases in the Middle District of Florida.  See Resp't's Obj., at 31. The undersigned finds the latter evidence significantly more objective, and therefore more persuasive.

Therefore, the undersigned reduces the paralegal rates in this case by ten percent for all paralegals.

### (b)  *Number of Hours Billed*

The Secretary does not advance an argument against the number of hours billed.

The undersigned conducted a line-by-line analysis of all the entries documented in the timesheets, despite the fact that when making reductions, a line-by-line evaluation of the fee application is not required.  McCulloch, 2015 WL 5634323, at *5 (quoting Wasson, 24 Cl. Ct. 482 (1991)).  The paralegals' timesheets are organized, and contain few block entries.  Therefore, no hour deductions are warranted.

Therefore, the amount awarded for paralegal work in this case is reduced by $1,226.[6]

---

[5] Similarly, Special Master Hamilton-Fieldman has stated that what are purported to be "local" rates "appear to be a hybrid of sorts, reached after some litigation and much negotiation, and to have been applied exclusively in vaccine cases prosecuted by these attorneys, quite isolated from other fees awarded in the [] locality they purportedly represent.  As such, they should be considered in the mix of rates to reach a 'local' rate, but they should not in themselves be determinative of that rate."  Hoehner v. Sec'y of Health & Human Serv., No. 14-637V, 2016 WL 7048793, at *6 (Fed. Cl. Spec. Mstr. Nov. 7, 2016).

[6] $27,681 total fees, minus $15,425 in attorneys' fees equals $12,256 in paralegal fees.  Ten percent of $12,256 is approximately $1,226.

### (3) *Summary*

Mr. Dominguez seeks $27,681 in attorneys' fees. Pet'r's Reply, at 25. This amount is reduced to $25,817.50.[7]

Admittedly, these reductions are not exactly precise. It is important to recall, however, that "the essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." Fox v. Vice, 563 U.S. 826, 838 (2011). While not precise, the evidence marshalled above is adequate to accomplish "rough justice."

### B. Costs

Mr. Dominguez asks for $3,808.99 in costs. These are reasonable.

## Conclusion

The undersigned finds an interim award of attorneys' fees and costs appropriate at this time. Of the total amount of attorneys' fees requested ($27,681), Mr. Dominguez is awarded **$25,817.50.** Of the total amount of costs requested ($3,808.99), Mr. Dominguez is awarded **$3,808.99.**

**Accordingly, the undersigned awards the total of $29,626.49 as a lump sum in the form of a check jointly payable to Mr. Dominguez and Mr. Dominguez's former counsel, Anne Toale.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.

**IT IS SO ORDERED.**

S/Christian J. Moran
Christian J. Moran
Special Master

---

[7] $27,681 minus $637.50 minus $1,226 equals $25,817.50.