# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
| | | |
|---|---|---|
| GEORGE DOMINGUEZ, | \* | |
| | \* | No. 12-378V |
| Petitioner, | \* | Special Master Christian J. Moran |
| | \* | |
| v. | \* | |
| | \* | Issued: June 24, 2019 |
| SECRETARY OF HEALTH | \* | |
| AND HUMAN SERVICES, | \* | Attorneys' fees & costs, |
| | \* | reasonable basis, unqualified expert. |
| Respondent. | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Clifford Shoemaker, Shoemaker, Gentry & Knickelbein, Vienna, VA for petitioner;
Darryl R. Wishard, United States Dep't of Justice, Washington, DC, for respondent.

## PUBLISHED DECISION GRANTING ATTORNEYS' FEES AND COSTS[1]

On October 29, 2018, petitioner moved for final fees and costs, requesting $38,568.90.  Because Mr. Dominguez previously moved for, and was granted, interim fees and costs, the period covered by the present motion includes only the period from August 1, 2017 onward.  The Secretary objects to Mr. Dominguez's motion on the ground that Mr. Dominguez is not entitled to an award because his petition does not, and never had, a reasonable basis.  Resp't's Resp., filed Dec. 12, 2018, at 8.  Although there were serious issues with Mr. Dominguez's petition and

---

[1] Because this decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).  This means the decision will be available to anyone with access to the internet.  In accordance with Vaccine Rule 18(b), the parties have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material before posting the decision.

the evidence he submitted, on balance Mr. Dominguez's petition did not lose its reasonable basis during the proceeding.  However, Mr. Dominguez's request includes several unreasonable items.  Accordingly, Mr. Dominguez is entitled to reimbursement of $27,311.00 for his reasonable fees and costs.

### Factual and Procedural History

The factual and procedural history of this case is relatively complex.  Parts of the history are adopted, without attribution, from the March 6, 2017 decision granting interim fees.

On August 31, 2011, Mr. Dominguez saw his family doctor because of diarrhea, nausea, and lightheadedness that lasted one day.  At that visit, Mr. Dominguez received a dose of the tetanus-diphtheria-acellular pertussis (TDaP) vaccine.  Exhibit 1 at 43-44.

On October 19, 2011, Mr. Dominguez visited a local emergency room due to pain in his testicles that began earlier that day and was admitted to the hospital.  After remaining in the hospital several days for testing, a rheumatologist diagnosed Mr. Dominguez as suffering from a vasculitis, probably Wegener's granulomatosis.  Id. at 177-79.

Mr. Dominguez's first attorney, Ms. Anne Toale, filed a petition on behalf of Mr. Dominguez on June 14, 2012, asserting that the TDaP vaccination caused his subsequent vasculitis.  The Secretary requested additional records.  See Resp't's Status Rep., filed Aug. 30, 2012.  Ms. Toale filed an additional set of records from Kaiser Permanente as exhibit 3 on January 25, 2013, and a statement of completion on March 14, 2013.

The Secretary did not challenge that Mr. Dominguez suffers from Wegener's granulomatosis, but recommended that compensation be denied because Mr. Dominguez had not provided evidence that TDaP could or did cause his injury.  Resp't's Rep., filed May 10, 2013, at 12.  The Secretary also asserted that Mr. Dominguez's Wegener's granulomatosis did not meet the Vaccine Act's severity requirement since his treatment appeared to end less than six months after the disease began.  Id. at 13.

A status conference was held on May 28, 2013, in which Mr. Dominguez was ordered to file additional medical records.  Order, issued May 29, 2013.

Because the parties expressed some interest in attempting to resolve the case informally, Mr. Dominguez was ordered to file an affidavit providing information regarding his potential damages.  Id.

Mr. Dominguez filed the damages affidavit on August 5, 2013, and additional medical records on September 3, 2013.  However, over the course of the next six months, Ms. Toale reported that she was having difficulty tabulating damages for communicating a demand to the Secretary.  See Pet'r's Status Rep., filed Jan. 20, 2014; Pet'r's Status Rep., filed Mar. 31, 2014.

On April 25, 2014, Ms. Toale filed a status report stating she had still not communicated a demand.  Without providing any additional explanation, Ms. Toale also communicated her intention to file a motion to withdraw as Mr. Dominguez's counsel after moving for interim attorneys' fees and costs.  Pet'r's Status Rep., filed Apr. 25, 2014.

On June 10, 2014, Ms. Toale submitted her motion for interim fees and costs incurred through that date.  Mr. Dominguez requested $27,681.00 in attorneys' fees and $3,808.99 in attorneys' costs.

The Secretary filed a thorough response to Mr. Dominguez's motion on July 9, 2014.  In his response, the Secretary challenged the reasonable basis for Mr. Dominguez's petition.  The Secretary noted that the only apparent research that counsel performed on the question of causation was an hour of "vasculitis literature review" performed the same day that Mr. Dominguez first contacted his counsel, November 10, 2011.  Resp't's Resp. at 3.  Between that date and June 6, 2014, the last billing entry submitted in the interim fees motion, the Secretary observed that Mr. Dominguez's counsel did not document any time for: "1) medical research by [counsel] regarding petitioner's potential vaccine injury claim; 2) efforts by [counsel]  to retain an expert to review petitioner's potential vaccine injury claim; 3) discussion by [counsel]  with a medical expert about petitioner's potential vaccine injury claim; or 4) efforts or discussion by [counsel] to communicate with petitioner's treating physician about petitioner's potential vaccine injury claim.  Id. (citing Exhibit A to Pet'r's Mot., at 1-18).  Based on the lack of evidence supporting causation in the record and Mr. Dominguez's counsel's minimum efforts to support causation with medical records or medical opinion, the Secretary argued that finding that reasonable basis exists would be

"premature" since "it is unclear whether petitioner here may be able to establish a reasonable basis for her claim." Id. at 34.

Mr. Dominguez filed a reply brief on July 16, 2014. In his reply, Mr. Dominguez argued that his attorney identified "numerous" articles supportive of causation before filing the petition. Reply, filed July 16, 2014, at 6. Furthermore, Mr. Dominguez argued, obtaining expert reports in Mr. Dominguez's case was not advisable given the limited scope of damages. Id. at 8. Instead, Mr. Dominguez argued, it was reasonable to pursue settlement before obtaining expert reports. Id. at 8.

On October 6, 2014, Mr. Dominguez was ordered to provide the articles he referenced in his reply brief of July 16, 2014. Mr. Dominguez was also encouraged to present an argument for why these articles supported Mr. Dominguez's claim. Later that same day, Ms. Toale moved to withdraw as counsel for Mr. Dominguez, citing "irreconcilable differences" with Mr. Dominguez. Ms. Toale served a copy of her motion on Mr. Dominguez at his last known address.

On November 5, 2014, Mr. Dominguez, through Ms. Toale, filed the information requested in the undersigned's October 6, 2014 order. Mr. Dominguez filed a list of 14 articles that he argued provided a reasonable basis for the claim. On November 19, 2014, the Secretary filed his sur-reply to Mr. Dominguez's response. In his reply, the Secretary argued that the articles did not change the evaluation of Mr. Dominguez's case since, inter alia, none of the articles linked Mr. Dominguez's specific vaccine with his specific injury. Resp't's Resp. at 5. Following the submission of the Secretary's sur-reply, Mr. Dominguez's motion for interim fees and costs became ripe for adjudication.

However, the undersigned did not rule on Mr. Dominguez's interim fees motion until nearly two and a half years later, on March 6, 2017. During this interim period, Ms. Toale was substituted as counsel by Mr. Shoemaker and Mr. Shoemaker took some time to become acclimated with the case. The undersigned deferred ruling on the motion for Ms. Toale's attorneys' fees and costs because the outcome of the motion could rise and fall with Mr. Dominguez's ability to obtain an expert report in support of compensation.

4

Through Mr. Shoemaker, Mr. Dominguez was ultimately able to retain an expert in support of his claim, Ms. Judy Mikovits Ph.D.,[2] and filed her first report on May 18, 2016, exhibit 24, just a month short of four years after Mr. Dominguez filed his petition.  Ms. Mikovits then supplemented her initial report with a second report on January 6, 2017.  Exhibit 68.

After submitting the reports from Ms. Mikovits, the undersigned awarded Mr. Dominguez a substantial portion of the 2014 fees in a decision issued on March 6, 2017.  As a prerequisite to awarding fees, the undersigned found that Mr. Dominguez's petition possessed a reasonable basis.  This finding was largely based upon the expert reports prepared by scientists who appeared to be sufficiently credentialed.  See First Interim Fees Decision, issued March 6, 2017, 2017 WL 1316961, at *3 (emphasizing the credentials of Mr. Ruscetti and Ms. Mikovits in finding that Mr. Dominguez's petition was, once their reports were filed, supported by reasonable basis).

On July 29, 2017, Mr. Dominguez filed a second motion for interim fees and costs, requesting $40,915.80 in fees and $34,095.70 in costs, for a total of $75,011.50.  These fees and costs covered the period running from the start of Mr. Shoemaker's representation, April 22, 2015, and ending on the date of the filing of the motion, July 29, 2017.

Two days later, the Secretary filed his response to Mr. Dominguez's motion.  In his response, the Secretary did not object to Mr. Dominguez's request.  Resp't's Resp. at 2.  Instead, the Secretary stated that he was "satisfied that the statutory and other legal requirements for an award of attorneys' fees and costs are met."  Id.

Based on the rationale expressed in Swintosky v. Sec'y of Health & Human Servs., No. 12-403V, 2017 WL 5899239 (Fed. Cl. Spec. Mstr. Nov. 6, 2017), on December 18, 2017, the undersigned awarded Mr. Dominguez the full amount of his request for fees and costs.  As part of the analysis, the undersigned found that Mr. Dominguez's petition was supported by reasonable basis.  The reasonable basis determination explicitly relied on the analysis from just a few months prior

---

[2] Although both Ms. Mikovits and Mr. Ruscetti signed the expert reports, Ms. Mikovits has appeared to testify in all cases in which she and Mr. Ruscetti submitted joint reports.  Thus, all references are made to her individually.  Because of the important distinction between physicians and non-physicians in this program, the undersigned refers to Ms. Mikovits as "Ms."

5

and noted that in the intervening months Mr. Dominguez had filed yet another report from his experts.  See Second Interim Fees Decision, slip op. at 2 (Fed. Cl. Spec. Mstr. Dec. 18, 2017).  On January 16, 2018, the Secretary moved for a review of the undersigned's second decision on interim fees and costs.  The Secretary did not challenge the determination that Mr. Dominguez had a reasonable basis, but instead challenged the undersigned's decision to grant Mr. Dominguez's fees request without an independent evaluation of the reasonableness of the amount of fees and costs awarded.  Resp't's Mem. Supp. Mot. for Review, filed Jan. 16, 2018, at 1.

During the pendency of the review of the interim fees decision, the parties proceeded with litigation on the issue of Mr. Dominguez's entitlement to compensation.  Mr. Dominguez filed his prehearing brief on December 22, 2017, and the Secretary filed his responsive brief on February 2, 2018.  Noting substantial deficiencies in Mr. Dominguez's prehearing brief, the undersigned ordered Mr. Dominguez to file a supplemental brief.  Order, issued Mar. 6, 2018, at 1-2.  Mr. Dominguez filed his supplemental brief on March 13, 2018.

As is often the case, preparing for Mr. Dominguez's hearing crystalized elements of Mr. Dominguez's claim.  In this case, what became evident in the weeks leading up to the hearing was that the expert reports from Ms. Mikovits carried little probative value because they were poorly written and researched.  Concerns about Mr. Dominguez's case were communicated to Mr. Dominguez during the prehearing status conference on March 20, 2018.  See order, issued Mar. 22, 2018, at 1.  Furthermore, the undersigned informed Mr. Dominguez that the reasonable basis for his petition was "fragile."  Id. at 2.  Shortly thereafter, Mr. Dominguez moved to dismiss his case.  Pet'r's Mot., filed Mar. 30, 2018.  This motion for dismissal was granted.  Decision, issued Apr. 2, 2018, 2018 WL 2225540.

While Mr. Dominguez's claim of entitlement was wrapping up, his second interim fees motion again became ripe after Judge Kaplan granted the Secretary's motion for review on March 8, 2018.  Judge Kaplan's Opinion and Order remanded the fees motion to the undersigned for reconsideration applying the "lodestar approach set forth in the controlling precedent." Opinion and Order, 136 Fed. Cl. 779 (2018).

The undersigned issued a fees decision in congruence with Judge Kaplan's order on May 25, 2018. Second Interim Fees Decision on Remand, 2018 WL 3028975. In this decision, the undersigned evaluated only the narrow question of whether the amount of Mr. Dominguez's requested fees and costs was reasonable. The statutory basis for the award, which was evaluated in the original fees decision but was not challenged by the Secretary and was not reviewed by Judge Kaplan, remained undisturbed. In the Decision on Remand, the undersigned awarded Mr. Dominguez $39,464.25 of the $75,011.50 requested. Most notably, the undersigned significantly reduced the proposed hourly rate for the work by Ms. Mikovits. The decision identified troubling aspects about Ms. Mikovits' credentials as a scientist. Id. at *5-7. Specifically, after substantiated allegations of data misrepresentation were brought against her, Ms. Mikovits had been fired from her last-held research position. Id. Perhaps more importantly, the undersigned identified several ways in which Ms. Mikovits' reports were "riddled with errors, exaggerations, and false statements." Id. at *6-7. After evaluating Ms. Mikovits' experience and training, her reputation in the field, and the quality of the work submitted, the undersigned found a rate of $75.00 per hour to be reasonable estimate of the value of her time. Id. at *7. The decision on fees and costs was not challenged and judgment entered on June 26, 2018.

On October 29, 2018, Mr. Dominguez filed a motion for an award of final fees and costs. Mr. Dominguez requested $27,688.25 in attorneys' fees and $10,180.65 in costs.[3] Notably absent in Mr. Dominguez's motion was any discussion of the reasonable basis for the petition. The Secretary's response was similarly thin on the merits, stating only that he deferred to the special master to determine whether reasonable basis for the petition exists. Resp't's Resp., filed Oct. 31, 2018, at 2.

The undersigned ordered the parties to file supplemental briefs that marshaled the objective evidence in support of the reasonable basis for Mr. Dominguez's claim of a vaccine injury. Order, issued Nov. 16, 2018, at 2 (citing Simmons v. Sec'y of Health & Human Servs., 875 F.3d 632, 635 (Fed. Cir. 2017); Chuisano v. Sec'y of Health & Human Servs., No. 07-452V, 2013 WL 6234660, at

---

[3] Petitioner's fees motion requests $10,880.65 in costs. Pet'r's Fees Mot., filed Oct 29, 2018, at 1. However, the tabulation of costs totals only $10,180.65. Id. at 9. It appears the figure $10,880.65 is a typographical error. Thus, this decision uses $10,180.65 throughout.

*12-13 (Fed. Cl. Spec. Mstr. Oct. 25, 2013), <u>mot. for rev. denied</u>, 116 Fed. Cl. 276 (2014)).

Mr. Dominguez submitted his supplemental brief in support of reasonable basis on December 7, 2018.  On December 12, 2018, the Secretary submitted his response.  This time, the Secretary clarified that his position was that Mr. Dominguez's petition never possessed a reasonable basis.  This position was a shift from his July 31, 2017 position that reasonable basis existed at that time.  Mr. Dominguez filed a reply brief two weeks later.

## Analysis

The pending motion raises two sequential questions.  The first issue is whether Mr. Dominguez's petition was supported by reasonable basis and thus eligible to receive an award of attorneys' fees and costs.  Second, because Mr. Dominguez's petition was supported by reasonable basis, the next issue is whether the amount Mr. Dominguez requested for his attorneys' fees and costs was reasonable.  Both questions are addressed in series, below.

## I.   Eligibility for Reimbursement of Fees and Costs

A petitioner who has not received compensation may be awarded "compensation to cover petitioner's reasonable attorneys' fees and other costs incurred in any proceeding on such petition if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim."  42 U.S.C. § 300aa-15(e)(1).

The Secretary does not argue that Mr. Dominguez lacks good faith, and there is no evidence to indicate Mr. Dominguez does not believe his claim is valid. Thus, the undersigned finds the petition was brought in good faith.  However, the parties disagree about whether Mr. Dominguez's petition was supported by reasonable basis and that element is thus the focus of this aspect of the decision.

## A.   The Parties' Arguments

Mr. Dominguez's argument in support of his claim that TDaP can cause the injury he suffered consisted of a long block quote from an article compiling four

case reports published in the Journal of Clinical Rheumatology.  Pet'r's Br., filed
Dec. 7, 2018, at 6 (citing exhibit 34 (Birck et al.) at 2).  The article, titled "ANCA-
Associated Vasculitis Following Influenza Vaccination: Causal Association or
Mere Coincidence?" reported on four cases over 10 years of new onset or relapsing
vasculitis following influenza vaccination and notes that "it seems possible" for the
temporal proximity to be more than coincidental.  Exhibit 34 (Birck) at 1.  In each
case report, the duration between vaccination and the onset of symptoms was
approximately 1-3 weeks.  Id. at 2.  Based on these case reports, the authors
speculate about a possible causal association and the underlying mechanism.

The paragraph of Mr. Dominguez's brief focused to the question of timing
was difficult to understand.  The argument referenced both the expert opinion of
Ms. Mikovits as well as an article by van den Brom et al.  Pet'r's Br., filed Dec. 7,
2018, at 7 (citing exhibit 41 (van den Brom) at 2).  The van den Brom article is a
case report of an individual who, within a week of administration of a checkpoint
inhibitor (a cancer treatment that interferes with internal checks on the immune
system), developed vasculitis.  Exhibit 41 (van den Brom) at 2.  Mr. Dominguez, in
his brief, cited Ms. Mikovits' application of that case report to Mr. Dominguez's
case, specifically that:

> In [van den Brom], immune therapy known as checkpoint inhibitors
> induced GPA rapidly but noted in retrospect that "the preexisting
> pulmonary nodular abnormalities might have been subclinical GPA"
> due to previous immune therapy. Thus, GPA can occur rapidly or over
> several months to years depending upon the extent of the immune
> dysregulation and overstimulation at the time the checkpoint inhibitor
> (vaccine) is given. Thus, the timing and course of Mr. Dominguez'
> disease development supports our general theory of causation.

Pet'r's Br., filed Dec. 7, 2018, at 7 (citing exhibit 24 at 15).  Although the
undersigned continues to struggle understanding Mr. Dominguez's reliance on the
van den Brom article, the Birck article was able to provide some helpful, though
not persuasive, information on the question of timing.  See exhibit 34 (Birck) at 2
(noting onsets, in case reports, of between 2 and 3 weeks following vaccination).

In his response, the Secretary argued that reasonable basis for the petition
did not exist.  As an initial matter, the Secretary noted that the undersigned special

master had previously found that reasonable basis for the petition *did* exist. Resp't's Br., filed Dec. 12, 2018, at 7.  The Secretary did not appear to acknowledge that he had previously conceded that the petition had a reasonable basis in his July 31, 2017 response to the second interim fees motion.  See id.  The Secretary argued that the undersigned's previous finding of reasonable basis was immaterial since the Federal Circuit has clarified in the interim period the framework for the reasonable basis analysis.  Id.  Whether Mr. Dominguez's case satisfied that framework, the Secretary argued, was the only question for this decision.  Id.

In contrast to the Secretary's lengthy opposition to reasonable basis in his July 9, 2014 brief opposing Mr. Dominguez's first motion for interim fees, the Secretary's brief did not address the substance of the evidence supporting Mr. Dominguez's claim.  Instead, the Secretary simply referenced his 2014 brief, which was written before there was any expert opinion evidence or medical literature filed the case.[4]

---

[4] A substantial portion of the Secretary's brief considered the question of whether the Vaccine Act allowed for reasonable basis to come and go during the pendency of the proceeding. The Secretary argued that, based on Simmons, reasonable basis was a one-time analysis and that it either existed or it did not.  Resp't's Br., filed Dec. 12, 2018, at 4 ("a claim cannot have a reasonable basis and then lose it during the pendency of the claim").  The Secretary recognized that judges of the Court of Federal Claims and special masters had long been interpreting the Vaccine Act to allow for reasonable basis to be a dynamic inquiry based on the evidence then in the record but argued that this position was legally erroneous based upon the same Federal Circuit precedent.  Id. at 6.  Conceivably, if the Secretary's interpretation of the Vaccine Act were correct, an analysis of the reasonable basis for Mr. Dominguez's petition may be bound by earlier decisions finding that his petition had a reasonable basis at the time the decisions were issued.

Mr. Dominguez's case was not the first time that the Secretary had argued this interpretation of the Vaccine Act before the undersigned special master.  The Secretary raised this same argument in a response to a fees motion filed in Frantz v. Health and Human Services, No. 13-178V.  Because of the importance of this question and to ensure consistent applications of the law in different cases before the undersigned special master, the adjudication of Mr. Dominguez's fees petition was delayed until after oral argument was to be held on March 20, 2019, in Frantz.

Just days before the scheduled oral argument in Frantz, the Secretary disclaimed his position that reasonable basis cannot be gained or lost in light of the Federal Circuit's recent nonprecedential order in R.K.  R.K. v. Sec'y of Health & Human Servs., 760 F. App'x 1010, 1012 (Fed. Cir. 2019).  As a result, the position is not further evaluated here.

## B.   Standards for Adjudication of Reasonable Basis

Reasonable basis is purely an objective evaluation of the weight of the evidence.  Simmons, 875 F.3d at 636.  Because evidence is "objective," the Federal Circuit's description is consistent with viewing the reasonable basis standard as creating a test that petitioners meet by submitting evidence.  See Chuisano, 2013 WL 6234660, at *12-13 (explaining that reasonable basis is met with evidence), mot. for rev. denied, 116 Fed. Cl. 276 (2014).  While the specific amount of supporting evidence required to satisfy reasonable basis is not well-defined, the evidence must support the claim set forth in the petition.  By way of contrast, for example, there cannot be powerful evidence in the record that effectively forecloses compensation.  Furthermore, subjective factors, such as a looming statute of limitations, shall not be considered in determining whether reasonable basis for the petition existed.  Simmons, 875 F.3d at 636.

The Federal Circuit and judges of the Court of Federal Claims have provided some guidance as to what reasonable basis is *not*.  A petition based purely on "unsupported speculation," even speculation by a medical expert, is not sufficient to find a reasonable basis.  Perreira v. Sec'y of Health & Human Servs., 33 F.3d 1375, 1377 (Fed. Cir. 1994) ("Congress must not have intended that every claimant, whether being compensated or not under the Vaccine Act, collect attorney fees and costs by merely having an expert state an unsupported opinion that the vaccine was the cause in-fact of the injury").  As another example, when "the medical and other written records contradict the claims brought forth in the petition," a special master is not arbitrary in concluding that reasonable basis for the petition did not exist.  Murphy v. Sec'y of Health & Human Servs., 30 Fed. Cl. 60, 62 (1993), aff'd without opinion, 48 F.3d 1236 (Fed. Cir. 1995) (table).

It is the burden of the petitioner to establish the petition's reasonable basis.  Carter v. Sec'y of Health & Human Servs., 132 Fed. Cl. 372, 379 (2017) (citing Woods v. Sec'y of Health & Human Servs., 105 Fed. Cl. 148, 152 (2012) and McKellar v. Sec'y of Health & Human Servs., 101 Fed. Cl. 297, 305 (2011)).

## C.   Analysis of Reasonable Basis

As reviewed in the procedural history, above, this is now the third time that the undersigned has evaluated the reasonable basis of Mr. Dominguez's petition. Notably, with each motion, the position of the Secretary has shifted.

11

In response to Mr. Dominguez's first fees motion, filed June 10, 2014, the Secretary stridently opposed the reasonable basis of the petition, largely on a lack of evidence supporting a connection between vaccines and Mr. Dominguez's injury. Resp't's Br., filed Nov. 19, 2014. Mr. Dominguez cured this deficiency by filing a report from Ms. Mikovits in 2016. Exhibit 24. Ms. Mikovits' report paved the way for the First Interim Fees Decision.

In response to Mr. Dominguez's second fees motion, filed July 29, 2017, the Secretary conceded that reasonable basis for the petition existed. Resp't's Br., filed July 31, 2017, at 2 ("respondent is satisfied that the statutory and other legal requirements for an award of attorneys' fees and costs are met").

Now, in response to Mr. Dominguez's third and final fees motion, filed October 29, 2018, the Secretary, once again challenges the reasonable basis of the petition. This time around, the Secretary states, contrary to the position stated in his July 31, 2017 brief, the petition "never had a reasonable basis." Resp't's Br., filed Dec. 12, 2018, at 7. The Secretary implicitly explains the shift in position as being a consequence of the Federal Circuit's holding in Simmons that reasonable basis was purely an objective inquiry. Id. at 7. The Secretary's explanation that Simmons justifies a change in his position is unconvincing since Simmons was decided on November 7, 2017, a month and a half before the decision on interim fees was issued on December 18, 2017. During that time, the Secretary did not make any filing noting additional authority that affected the analysis. Even more, it is not clear how the holding in Simmons would change the analysis of the reasonable basis for Mr. Dominguez's petition.

An evolution in the Secretary's position on reasonable basis is not necessarily surprising. Reasonable basis is satisfied with evidence. Chuisano, 2013 WL 6234660, at *12-13. In this case, evidence developed throughout its pendency. Some of that evidence supported a claim of causation, some of it did not. A review of the evidence (objective factors) may cause a shift in the Secretary's position on reasonable basis. It is also now well-settled law that the reasonable basis of a petition may come and go during the pendency of a proceeding. R.K., 760 F. App'x at 1012; Perreira, 33 F.3d at 1377.

12

However, the change in the Secretary's position raises some concern because the undersigned found reasonable basis in December 2017 and the evidence has not changed significantly.  The only substantive filings entered since that date are some supplemental medical records from Mr. Dominguez, exhibits 87-89, and the parties' prehearing submissions.  The Secretary's prehearing submissions did include a short supplemental report from his expert, Dr. Forsthuber, that provided summaries of several medical articles as well as clarifications regarding his opinion about the onset of Mr. Dominguez's condition. Exhibit TT at 3-5.  The Secretary's most recent brief on reasonable basis did not present argument for how these medical articles and statement of expert opinion changed the reasonable basis calculus.  Notably, the Secretary's most recent brief did not provide argument addressing the substance of *any* of the evidence.  Since the reasonable basis analysis is ultimately an analysis of the underlying evidence in support of the petition, this omission was notable.  See Simmons, 875 F.3d at 635; Chuisano, 2013 WL 6234660, at *12-13.  In the absence of additional evidence that may shift the reasonable basis analysis since the December 18, 2017 decision granting Mr. Dominguez interim fees, the undersigned is reluctant to now change course.

To be sure, the present fees motion requires an independent finding that Mr. Dominguez satisfies the statutory requirements for attorneys' fees and costs; citing the Secretary's previous position and the lack of new evidence since that position was entered is likely not enough.  See McIntosh v. Sec'y of Health & Human Servs., 139 Fed. Cl. 238 (2018).  Reasonable basis is not a demanding standard and the evidence presented by Mr. Dominguez, though weak, meets that requirement. Accordingly, Mr. Dominquez is eligible for compensation of his reasonable attorneys' fees and costs.

## II.   <u>Reasonableness of the Requested Amount</u>

The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act.  This is a two-step process.  Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1348 (Fed. Cir. 2008).  First, a court determines an "initial estimate … by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'"  Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial

calculation of the fee award based on specific findings.  Id. at 1348.  Here, because the lodestar process yields a reasonable result, no additional adjustments are required.

In light of the Secretary's lack of objection to the amount of fees and costs requested by Mr. Dominguez, the undersigned has reviewed the fee application for its reasonableness.  See McIntosh, 139 Fed. Cl. at 238.

## A.   Attorneys' Fees

The hourly rates charged by Mr. Shoemaker and the members of his firm are in line with those previously awarded by other special masters.  See, e.g., Nixon v. Sec'y of Health & Human Servs., No. 13-738V, 2019 WL 1149942, at *2 (Fed. Cl. Spec. Mstr. Feb. 6, 2019) (noting that "the rates requested herein are in conformance with what myself and other special masters have consistently awarded Shoemaker, Gentry & Knickelbein attorneys").  The undersigned has independently reviewed the requested rates and finds them to be reasonable.

While the requested hourly rates are reasonable, the actual work expended, as detailed in the attorneys' billing statements, presents two issues.

First, Ms. Knickelbein continues to perform work that is largely consistent with the work of a paralegal.  This same concern was stated in the most recent decision on interim fees and costs.  Second Interim Fees Decision on Remand, 2018 WL 3028975, at *2-3.  The billing statements accompanying the present motion indicate that the Shoemaker firm has not addressed this issue with their billing practices.

As noted in the interim fees decision, work of the nature typically performed by a paralegal or administrative assistant should be billed at a rate commensurate with that work, even when the work is performed by an attorney.  See Valdes v. Sec'y of Health & Human Servs., 89 Fed. Cl. 415, 425 (2009) (noting that "the Special Master exercised appropriate discretion in denying requested costs for work performed by petitioner's counsel's associate" when the special master determined "that the associate's time spent obtaining medical records was more consistent with paralegal duties."); see also Bratcher v. United States, 136 Fed. Cl. 786, 796 (2018) (declining to reimburse for work even at paralegal rates when

plaintiffs failed to demonstrate that the work was not "largely clerical or secretarial in nature").

Ms. Knickelbein's work continues to be more consistent with the work of a paralegal, or even an administrative assistant, than the work of an experienced attorney. Ms. Knickelbein's billing entries indicate that her role is largely as a go-between for the Office of Special Masters and the attorneys who actually litigate the cases, Mr. Shoemaker and Ms. Gentry. Ms. Knickelbein reviews the docket, emails Mr. Shoemaker regarding filings in the docket, and then makes entries onto the docket, presumably at Mr. Shoemaker's direction. She also similarly interacts with the expert witnesses. These tasks, in the undersigned's experience, are almost universally billed at a non-attorney rate, if they are billed at all. Accordingly, Ms. Knickelbein's work will be reimbursed at the top of the McCulloch range for paralegal work: $148 in 2017 and $153 in 2018. This results in a deduction of $3,728.00.

In addition, Mr. Shoemaker's entries continue to be exceedingly vague, which frustrates the undersigned's review of the reasonableness of the number of hours spent on Mr. Dominguez's petition. While this problem with Mr. Shoemaker's entries was also raised in the second interim fees decision, it is not limited to this case. Instead, as with Ms. Knickelbein's entries, it appears to be an endemic issue with Mr. Shoemaker's billing habits. See Nixon, 2019 WL 1149942, at *2 (citing Cianni v. Sec'y of Health & Human Servs., No. 16-1052V, slip op. at 2-3 (Fed. Cl. Spec. Mstr. Sept. 21, 2018); Second Interim Fees Decision on Remand, 2018 WL 3028975, at *3; Brodie v. Sec'y of Health & Human Servs., No. 17-437V, 2018 WL 3991233, at *3 (Fed. Cl. Spec. Mstr. June 26, 2018); Eworonsky v. Sec'y of Health & Human Servs., No. 04-992V, 2018 WL 2225379, at *4 (Fed. Cl. Spec. Mstr. Apr. 20, 2018)). As with the second interim fees decision, the undersigned's concern is not so much whether Mr. Shoemaker is overbilling; the total number of hours appears generally reasonable. The concern instead is that because of the way Mr. Shoemaker bills, the undersigned must resort only to general estimations about the overall number of hours billed as opposed to an assessment of the reasonableness of the underlying work that was performed.

A review of Mr. Shoemaker's billing entries hints that Mr. Shoemaker may be working to address this problem. Although it is difficult to tell, some of the later billing entries appear to have more content than the earlier ones. Based on his decades of work in this Program, Mr. Shoemaker deserves the benefit of the doubt.

Accordingly, the undersigned concludes that Mr. Shoemaker is making a purposeful effort to improve the detail in his billing statements and thus a punitive deduction is not required.  To address concerns about reasonableness, the undersigned finds only a 10% reduction to be appropriate.  This results in a deduction of $1,009.90.

In addition to the fees requested in the original motion, Mr. Dominguez also requests $3,480.00, or eight hours at $435.00 per hour, for fees associated with the preparation of the brief in support of reasonable basis.  This amount is awarded in full.

### B. Attorneys' Costs

Mr. Dominguez also moves for reimbursement of $10,180.65 in attorneys' costs.  Except for $130.65 in costs associated with medical records, it is fully accounted for by an invoice of $10,050.00 for Mr. Dominguez's expert witness, Ms. Judy Mikovits.

Like attorneys' fees, a request for reimbursement of costs must be reasonable.  Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (Fed. Cl. 1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994).  Reasonable expert fees are determined using the lodestar method, in which a reasonable hourly rate is multiplied by a reasonable number of hours.  Caves v. Sec'y of Health & Human Servs., 111 Fed. Cl. 774, 779 (2013).

The undersigned has previously set Ms. Mikovits' reasonable hourly rate at $150 per hour based on her qualifications and experience.  To set this rate, the undersigned started with a rate of $250 per hour as being a reasonable rate for the average non-medically-trained immunologist serving as an expert witness in this Program.  Second Interim Fees Decision on Remand, 2018 WL 3028975, at *5.  This $250 benchmark is based on the undersigned's experience compensating medical and non-medical experts with varying levels of qualifications.

However, Ms. Mikovits is not the average non-medically-trained immunologist.  She does not have an academic appointment, she does not have an ongoing research program, and her publication history is not impressive.  See exhibit 84.  Perhaps even more concerning, Ms. Mikovits has been discredited as a research scientist due to substantiated allegations of data misrepresentation in at least one of her most notable publications.  Second Interim Fees Decision on

Remand, 2018 WL 3028975, at *5-6 (citing Rogero v. Sec'y of Health & Human Servs., No. 11–770V, 2017 WL 4277580, at *47 (Fed. Cl. Spec. Mstr. Sept. 1, 2017); Trine Tsouderos, Discredited Chronic Fatigue Researcher in California Jail, Chicago Tribune, Nov. 22, 2011)).  Accordingly, setting Ms. Mikovits' reasonable hourly rate based on individuals whose curriculum vitaes are categorically more impressive appears inapposite.  Instead, the undersigned found $150 per hour to be a reasonable assessment of the value of Ms. Mikovits' time.

Although $150 per hour is a reasonable hourly rate for someone with Ms. Mikovits' credentials as an expert, her performance as an expert witness in this case was so poor that the undersigned felt compelled to make an additional 50% deduction from her baseline rate of $150.  Id. at *6-7 (citing Sabella v. Sec'y of Health & Human Servs., 86 Fed. Cl. 201, 206 (2009) (noting that an appropriate rate for an expert also depends, in part, on "the nature, quality, and complexity of the information provided").  This downward adjustment, though substantial in amount, was called for by the extent to which Ms. Mikovits' reports incorporated errors, exaggerations, and false statements to promulgate her opinions.  Id.

Mr. Dominguez now asks for the undersigned to revisit this downward adjustment both retrospectively (to invoices addressed in the interim fees decision) and prospectively (to invoices covered by the present fees motion).  Pet'r's Br., filed Dec. 7, 2018, at 8-9.  The Secretary objects to any retrospective adjustments to the amount awarded for Ms. Mikovits' work, arguing that Mr. Dominguez is barred from relief since judgment has entered.  Resp't's Br., filed Dec. 12, 2018, at 7-8.  Cf. McCulloch v. Sec'y of Health & Human Servs., 923 F.3d 998, 1001 (Fed. Cir. 2019) (holding that a merits judgment should not be reopened after the period for a motion for review has lapsed except for relief offered by Rule 60).  Regardless of any asserted basis for a retrospective adjustment, the undersigned is disinclined to revisit the rates previously awarded to Ms. Mikovits.

Indeed, Mr. Dominguez has not raised any substantive challenge to the analysis in the interim fees decision and the undersigned has not independently identified any reason to disturb the finding.  Instead, Mr. Dominguez cited the Chief Special Master's fees decision in Rogero, stating that the Chief Special Master found $250.00 per hour to be reasonable.  Pet'r's Br., filed Dec. 7, 2018 at 9 (citing Rogero v. Sec'y of Health & Human Servs., No. 11–770V, slip op. at 6-7 (Fed. Cl. Spec. Mstr. Aug. 22, 2018)).  The undersigned has reviewed the Chief Special Master's decision in Rogero and does not see how it supports Mr.

Dominguez's argument.  Citing the undersigned's second interim fees decision in this case, the Chief Special Master, was highly critical of Ms. Mikovits and—without distinguishing between her hourly rate[5] and the number of hours billed—cut Ms. Mikovits' invoice by half.  Rogero, issued Aug. 22, 2018, at 7.  It is not clear how the Rogero fees decision can stand for the proposition that $250.00 per hour is a reasonable hourly rate for Ms. Mikovits' work.

In fact, as time has passed and the portfolio of work that Ms. Mikovits' has submitted to the Vaccine Program has increased, it has become clear that Ms. Mikovits' performance in this case was not an aberration.  In case after case, Ms. Mikovits has done work not becoming of an expert witness and, far too often, relied on material misrepresentations.

For instance, in McCabe v. Sec'y of Health & Human Servs., Ms. Mikovits made statements that she most likely knew were misrepresentations to buttress her credibility as an expert.  No. 13-570V, 2018 WL 3029175, at *26 (Fed. Cl. Spec. Mstr. May 17, 2018).  Prior to the hearing, the opposing expert noted that Ms. Mikovits' C.V. included a paper that had been retracted following substantiated allegations of data misrepresentation.  Id. at *18.  In a subsequent report prepared by Ms. Mikovits, she claimed that the retraction of the Science paper was political and not scientific.  Id. at *20.  To support this, she cited a 2010 paper that "confirmed and extended" the results of her retracted paper.  Id.  Ms. Mikovits did not convey, however, that the second paper had also been retracted because the results did not hold up to further scrutiny.  Id. at *26 (referencing Shyh-Ching Lo et al., Retraction for Lo et al., Detection of MLV-Related Virus Gene Sequences in Blood of Patients with Chronic Fatigue Syndrome and Healthy Blood Donors, 109 Proc. Nat'l. Acad. Sci. 346 (2012)).  To be sure, issues with this misrepresentation was not the only issue in McCabe, as in with the Dominguez case, the rest of Ms. Mikovits' testimony was found to be particularly unpersuasive and unfounded in the record.  See McCabe, 2018 WL 3029175, at *53.

Concerns about potential misrepresentations in Ms. Mikovits' testimony continues today.  In a recently issued decision, the Chief Special Master remarked on her concerns about Ms. Mikovits' testimony.  The Chief Special Master conveyed that she was "especially concerned by [Ms. Mikovits'] lack of citation to

---

[5] In Rogero, Ms. Mikovits requested $350 per hour. Rogero, slip op. at 6 (Aug. 22, 2018).

appropriate medical literature, or misuse of the medical literature [she did] cite." Deisher v. Sec'y of Health & Human Servs., No. 17-294V, 2019 WL 1870737, at *15 (Fed. Cl. Spec. Mstr. Apr. 1, 2019).

Mr. Dominguez's petition, McCabe, and Deisher are only three cases of a number in which Ms. Mikovits has participated.  To avoid the possibility of drawing conclusions from an unrepresentative sample, the undersigned searched a computerized database to identify all entitlement decisions referencing Ms. Mikovits.  This search identified four other cases, none of which spoke positively of the opinions she provided.

In Rogero v. Sec'y of Health & Human Servs., the special master concluded that Ms. Mikovits' theory was incoherent, relied on facts not in the record, and that she provided opinions on topics on which she was "wholly unqualified" to opine. No. 11-770V, 2017 WL 4277580, at *24 (Fed. Cl. Spec. Mstr. Sept. 1, 2017), mot. for rev. denied, slip op. (Fed. Cl. Jan 11, 2018), aff'd, 748 F. App'x 996 (Fed. Cir. 2018).  In Bertolucci v. Sec'y of Health & Human Servs., the special master found the reports from Ms. Mikovits to be "confusing and unintelligible."  No. 15-1573V, 2018 WL 4784202, at *1 (Fed. Cl. Spec. Mstr. Aug. 29, 2018).  In Barker v. Sec'y of Health & Human Servs., the special master found her medical theories to be "unpersuasive and inapplicable to the instant case." No. 16-1554V, 2018 WL 2772454, at *2 (Fed. Cl. Spec. Mstr. May 11, 2018).  And in Rose v. Sec'y of Health & Human Servs., the special master found her reports to be, simply, "unpersuasive."  No. 16-1095V, 2019 WL 1531521, at *1 (Fed. Cl. Spec. Mstr. Mar. 15, 2019).

Based on the sum of Ms. Mikovits' experience in this Program, her qualifications to be an expert witness are questionable.  Ms. Mikovits' reputation at the beginning of her participation in the Vaccine Program was far less impressive than most.  However, at least here, petitioners were permitted to continue with her as their expert witness with the hope that those aspects of her experience that were impressive would provide petitioners and the Vaccine Program value. Furthermore, the undersigned is aware that petitioners have reported some difficulty obtaining expert testimony in support of their petitions.  To the extent that this difficulty is the result of deficits in the underlying merits of some petitioners' claims versus systemic obstacles to petitioners in this Program is not clear.  As with most things, it is likely to be a combination of both.  Regardless,

Ms. Mikovits has now provided enough written and oral testimony that her performance in this Program can be evaluated.  The conclusion of that assessment, from the undersigned's vantage point, indicates that she does not possess the characteristics of an effective expert witness.

By this point, continuing to note that Ms. Mikovits submits substandard work-product and paying her for that work-product appears to be internally inconsistent.  By reimbursing Ms. Mikovits for her work, this Program is implicitly stating that her work brings value while, at the same time, stating explicitly in decision after decision that this is not so.  This discordance is not easily explained.

Nevertheless, the undersigned recently awarded Mr. Dominguez reimbursement for Ms. Mikovits' work at an hourly rate of $75.00.  Deciding, so shortly after the second interim fees decision, that Ms. Mikovits' work is not compensable at all may be unfair to Mr. Dominguez.  Accordingly, the undersigned will continue to award reimbursement for Ms. Mikovits' work in this case at the $75.00 rate.  However, petitioners and petitioners' counsel should be forewarned that because of the substantial issues with Ms. Mikovits' performance as an expert witness, expecting any reimbursement for her work-product going forward, at least from the undersigned special master, would be misguided.

Beyond issues with Ms. Mikovits' hourly rate, her invoice is also problematic.  Ms. Mikovits' invoice requests reimbursement for 43 hours of work.  Pet'r's Fees Mot., filed Oct 29, 2018, at 11.  This amount is not concordant with the amount of work performed during the period covered by the invoice, which runs from March 20, 2017 to March 26, 2018.  During that time, Ms. Mikovits submitted one responsive report, exhibit 86.  This report was four pages long, three pages of which was copied and pasted abstracts from cited articles.  More substantially, Ms. Mikovits also submitted annotations to previously cited references.  See Pet'r's Status Rep., filed Oct. 9, 2017, at 2-6.  Ms. Mikovits also performed some ancillary work, including helping the attorneys with the pretrial brief.

Ms. Mikovits' actual invoice does not help the undersigned ascertain how 43 hours of work was expended.  The invoice relies on block entries, the most egregious of which was 17 hours billed for "review new records and literature."  Pet'r's Fees Mot., filed Oct. 29, 2018, at 11.  This type of block-billing frustrates

the undersigned's statutory obligation to find the requested costs reasonable before awarding them under the authority provided by the Vaccine Act.  McIntosh, 139 Fed. Cl. at 250; see also Caves, 111 Fed. Cl. at 781 (holding that expert costs can be reduced when expert witnesses fail to "create detailed time sheets contemporaneously" such that others can "monitor the work of those experts and ensure that the work they perform is both necessary and reasonable").  Based on the work submitted, the undersigned finds 10 hours to constitute a reasonable amount of time for the work performed.  See Caves, 111 Fed. Cl. at 784 (holding that special masters may estimate the number of hours reasonably expended by an expert on a case).  Accordingly, Mr. Dominguez is awarded $750.00 for expert costs and $130.65 for routine costs.

*     *     *

For the reasons stated above, Mr. Dominguez is awarded:

**A lump sum of $27,311.00 in the form of a check made payable to Mr. Dominguez and Mr. Dominguez's attorney, Clifford Shoemaker.**

These amounts represent reimbursement attorneys' fees and other litigation costs available under 42 U.S.C. § 300aa-15(e).  In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.

**IT IS SO ORDERED.**

s/Christian J. Moran<br>
Christian J. Moran<br>
Special Master